Colton against Frerich is our next case for argument. And if Okay. Thank you. Thanks. This holdovers. Good morning, your honors. May it please the court. My name is Terry Saunders, and I represent the plaintiffs, Anthony Colton and David Goldberg. Uh, the issue of the plaintiff's challenge in this case, a provision of the Illinois version of the Unclaimed Property Act that says that unclaimed property owners may not receive income earned on their property while it is in state custody on the grounds that this provision is an unconstitutional taking. The issue on the appeal is whether this constitutional claim can proceed in federal court. The district court dismissed both counts of the complaint on subject matter jurisdiction under Williamson County versus Hamilton Bank, saying that the claims were not right. The custodial statute and the state holds the money, but has no property interest in it. Would there be a difference with respect to rightness between declaratory relief saying that the class members are entitled to just compensation for the earnings on their property? And a declaratory judgment specifying how that compensation is to be calculated? You know, the state has not had an opportunity to determine how such compensation should be determined, I don't think. They haven't considered it, Your Honor. The first step, and our declaratory relief was in a series of steps, but the first step is simply to say, as really this court in the Surajewski case said that the clear, simple rule, what we're adding there are simply further constitutional requirements that the measure of the value is the fair market value of the property taken. And logically, I think that follows from the fact that if this is a taking, then the value is measured by the fair market value. There's no attempt to set the amount. I mean, the state would still be able to, if it goes back to the state under the first count, the state would be able to determine what that amount should be. And the added declaratory relief really goes to what the measure is, fair market value, and then what standard might be used to measure it. And the state, obviously, if this case proceeded, would have an opportunity to weigh in on what those should be. You know, you just mentioned Surajewski, and I know that we're not at the merit stage of the case, but I'm curious what you intend to argue about SWCC's reasoning that because the state could deem the property abandoned in toto, then it has the right to say that property owners have at least abandoned their right to the interest earned while in the state's custody. And, you know, Surajewski seems to distinguish the Illinois scheme on that basis. And why wouldn't that reasoning defeat your takings claim? The Illinois scheme is really the same as the Indiana scheme. The only thing different here is that there is a decision of the Illinois Supreme Court, which says, well, the state can do this because it can declare this abandoned, but the statutes are both custodial statutes. So the Indiana statute, the Illinois statute, the statutory scheme is the same. The difference is that we have the federal court saying, well, in the case of Surajewski, at least, where we had an interest-bearing account and the state didn't compensate Mrs. Surajewski for the interest part of the account when it took the property. Under SWCC, the Illinois Supreme Court says, well, you don't have to do that because it's abandoned property. But that is exactly what we're saying is the taking. And the statute does not, it's not in a sheet statute. It's a custodial statute. And I think as this court pointed out in Surajewski, that before the state can take the property, there has to be some reasonable basis for doing it. And there isn't in this statute. In fact, in Illinois, the property remains in the custody of the state indefinitely. There's not an end, and it doesn't, a sheet. And Illinois has a separate provision of a sheet statute, which isn't incorporated in this statute. So I think what the problem, the problem with Zwick and why it's our position that, in fact, Zwick has closed the courtroom, the courtroom and state court procedures to claims of this sort, is that it declares, in effect, that the property is the sheet when there's no basis for doing it. Ms. Saunders, I hope you're planning to get to the reason you lost in the district court, which is Williamson. Which is Williamson, exactly. Well, but on count one, the reason we lost in the district court was- I'm not very interested in numbering the counts. I'm interested in the legal theories. The theory was that the claim wasn't right. And the district court looked at the claims together, basically, and said, well, you're really asking for compensation. And count one does not ask for- Let's forget about counts. Okay. Right? And let's assume one can throw out any request for compensation for a reason that the district court didn't mention and the parties don't discuss, which is the state is not a person for purposes of 1983. Right? Compensation would come from the state and you can't sue the state under 1983. So let's just focus on the Williamson question, which is whether you have to go to state court and ask for compensation. Now, as I understand your position, you're relying almost completely on Yee against Escondido. And the defendants say, essentially, that your understanding of Yee was overtaken by Lingle against Chevron. And your reply brief doesn't mention Lingle. Correct. So I would be interested in hearing what you have to say. I don't know why you didn't address it in the reply brief, but this is your chance. Because the basic principle in Yee, as well as in San Remo, is that if it's just a facial challenge, and Williamson says- The argument, as I understand it, is that Yee was not a takings case at all. It's a due process case, not a takings case. And if it's not a takings case, it doesn't establish any rule about how you handle takings cases. That, as I see it, is the argument. And it's what I think you need to address. But there was a claim of a taking in Yee, as well as in San Remo. And in both of the cases, the courts say, and it's clear in San Remo also, that if it's a facial challenge, if you're just claiming that a statute is unconstitutional, you don't have a Williamson problem. A lingual can be read to say that there's no such thing as a facial takings challenge. It just doesn't exist. And that's a decision of the Supreme Court in 2005. And as I say, your reply brief ignores it. This is your chance to address the significance of lingual, and I wish you would do it. Well, Your Honor, you know, probably we didn't read it properly to say that, but, you know, in these cases, as well as cases from this circuit, have recognized that facial challenges are not covered by Williamson's requirements. And if there is no such thing after lingual, what happens? If there's no such thing after lingual, then if what you're saying is that- I'm not saying anything. I am trying to get you to address the Supreme Court's holding in lingual. Well, Your Honor, you know, I have to, you know, I probably need to look at it again to address it. It's a little late after an oral argument in court of appeals. Well, it is a little late. I agree. I agree. But the way that it was presented by the state was not that it overruled or eliminated what Ye and San Romo say about facial challenges. And, you know, perhaps, you know, that obviously is an oversight on our part. But, so I guess, you know, what I would say at that point is that the same issue came up in the Sarajewski case, and we didn't have a problem of Williamson there. There was no Williamson argument raised in Sarajewski. I know it wasn't raised, Your Honor, but subject matter jurisdiction can be raised. What makes you think that Williamson County is jurisdictional when the Supreme Court has expressly said twice that it is not? Well- Horn against the Department of Agriculture says that Williams County is not jurisdictional. And that was three years after Stop the Beach Renourishment allowed waiver of a Williamson claim. And jurisdictional contentions can never be waived. That's correct. So how can it be jurisdictional after the Supreme Court has, in those two cases, told us it isn't? Well, I can't argue with that, Your Honor. I'm going to reserve my time for rebuttal. Thank you. Thank you. Ms. Hanson. Good morning, and may it please the Court. I'm Assistant Attorney General Christina Hanson on behalf of the Treasurer, Michael Freerichs. There are two independent bases for affirming dismissal of plaintiff's complaint. The first, as the District Court determined, is that the claims are not right. And the second is that they are barred by the 11th Amendment. I'm not sure why, as a matter of logic, these claims are not right. Section 15 is clear, as the Supreme Court said in SWCC. And that very Court has said that Section 15 results in no taking that requires compensation. So isn't the result of any inverse condemnation claim in state court a foregone conclusion? I don't think it is, Your Honor, because this Court in Sarajewski cited SWCC with approval. And so I think that argument goes to whether it would be futile to bring a claim in state court. But the futility is if there's no remedy available, if there's no mechanism to bring the claim. And here there is a mechanism to bring the claim. Under Section 19, That's not my colleague's question. It's one that bothers me, too. There's a mechanism to bring a claim, but it appears to be absolutely doomed that no in light of the language of the statute and the holding of the Supreme Court of Illinois, that they're going to get a penny, right? And if we already know what the state thinks about payment on a claim like this, what's the point of knocking on the door yet again? That a plaintiff that seeks relief can then bring their claim in state court. They can bring the claim, I assume, at the risk of being sanctioned for frivolous litigation. But the ability to bring a claim that you are sure you're going to lose is, why is that what Williamson requires? Right? Suppose the state says, we're going to take the following parcel. And statute number two says, anybody who files a lawsuit about that parcel will lose, period. Right? Wouldn't statute number two make it unnecessary to go and litigate about the taking of that parcel? But that's not the situation here. Because as this court acknowledged, this court cited SWCC with approval in Sarajewski. And so to the extent that a plaintiff seeking compensation through the state is going to bring in a claim for compensation, it's going to- Look, stop talking about Sarajewski. There was no Williamson argument in Sarajewski. We didn't decide anything about Williamson and Sarajewski. Right? I'm just asking the generic question, which I understood my colleague to be asking too, which is, if you are perfectly confident that a claim in state court is pointless, indeed would be viewed by the state as frivolous, why does Williamson require that step? Because that's a judgment call as to whether it's pointless. If a claim- Oh, there's no doubt. Really, you're going down the wrong alley there. I mean, Illinois has a procedure by which a property owner who complains of a taking can bring an inverse condemnation claim in state court. But under the circumstances of this case, there would be no point, no point in the plaintiff's pursuing such a claim. Section 15 of the Act makes it clear that the owner of unclaimed property has no right to interest earned while the property was in the state's position. And that doesn't require any interpretation. I mean, you know, look at SWIFT. The Illinois Supreme Court made its observation. It's a useless act. But even if this court were to find that Williamson County ripeness analysis, that the claims are not unright under Williamson County, they are still barred by the 11th Amendment. Plaintiffs, in essence, are asking for damages in this case. Look, as I said to Ms. Saunders, they can't get damages because 1983, a state is not a person under 1983. All you can get is prospective relief. That's the consequence of Michigan against the Department of State Police. And the Supreme Court held in Lapides against Georgia, therefore, that there is no such thing as a sovereign immunity defense or issue in 1983 litigation. It doesn't exist. And the reason is because there is no claim. Right. And, you know, Lapides' decision of the Supreme Court, we're going to follow it. There's no sovereign immunity issue here, but there's also no claim. The only possible claim is for prospective relief. So that's what we need to worry about. But this isn't a claim for prospective relief. This is a taken claim. That's what a request for a declaratory judgment is. But as the district court found, what plaintiffs are asking in this, what plaintiffs have brought here is essentially a claim for damages. This is not a claim for injunctive relief. It's a claim for declaratory relief. That's a request for prospective relief. Really, it is. Take my word for it. Certainly, you have to go to federal court for relief, right? Excuse me? Yeah, I just asked you to concede your entire case. I said, that means you have to go to federal court, right? Under what Judge Easterbrook just indicated to you the case holds. It's our position that this claim cannot be brought in federal court. You know, it seems to me that count one at least seeks only prospective relief on behalf of class members who are going to seek return of their property going forward. Why isn't that the sort of prospective declaratory relief that the, you know, that Ex Parte Young and its line of cases permits? Because in the takings context, the relief that they're seeking is essentially compensation. They're seeking compensation for what they allege to have been a taking of their property. And that is a claim for damages, which cannot proceed against the state and federal court. What do you think about the reasoning in the ninth that, you know, the Ninth Circuit has concluded that when a class is seeking the return of property that belongs to the class members and that the state is wrongfully withholding, then the class is not really seeking funds from the state treasury for purposes of the Eleventh Amendment? The Ninth Circuit addressed the claim in the context of unclaimed property and held that the principle, while the actual property might not be subject to the Eleventh Amendment, any interest or earnings on the property would be a claim for damages against the state and is barred. And that was in the Swaver v. Connell decision in the Ninth Circuit. And the Fifth Circuit followed that, followed that same approach and held that the claim, any claim for the interest and damages on the property is barred by the Eleventh Amendment. While plaintiffs have styled their claim as one for prospective injunctive relief, it's actually a claim for damages in the sense that they allege that a taking occurred and are seeking compensation. And the district court dismissed that under the rightness analysis because they hadn't first sought relief through the state process. But it's also barred by the Eleventh Amendment because it seeks an award of damages from the state treasury. While plaintiffs contend that the state has waived its Eleventh Amendment immunity, that's that the plaintiffs, they can bring a claim in state court. And to the extent that they have a good faith argument to distinguish themselves from SWCC, they can do so in state court. Unless the court has any further questions, we ask that you affirm dismissal of plaintiffs. Mm-hmm. Thank you. Ms. Hanson? Thank you. Anything further, Ms. Saunders? Just a few points, Your Honor. I would point out on the lingual analysis, I do want to get back to that for a minute, that we also relied on one thing in lingual. There, the Supreme Court didn't say, or at least this court in subsequent decisions did not read the Supreme Court to have said that there is no longer a facial challenge. It's no longer, it does not have to fulfill the Williamson requirement. The way that the court, what the court in lingual said was that the Supreme Court no longer recognized the substantially advance of the legitimate state interest as immediately ripe. And I think there were a couple decisions by this court, as well as the San Remo opinion in the Supreme Court after the lingual decision that did recognize that a facial challenge could be brought. So Peters was one. I think Muscarella was another. And those were both after the lingual decision. On one other, on the point that was discussed about bringing a claim for our just compensation claim in count, I know you, I don't want to get into which count is which count, but the Fifth Amendment, the Fifth Amendment is a self-executing amendment. And without getting into whether this is a claim against the state, whether it's a claim against the treasurer under ex parte young and whether it can be brought, I always have a hard time articulating that. But we could bring, a claim can be brought under the Fifth Amendment because it does require that the state waive its sovereign immunity in order to pay just compensation. And in this case, because of this WIC decision, there is no way to go into state court. I must say, I'm not entirely following this. The Fifth Amendment applies only to the national government. What gets this applied to the states is the Fourteenth Amendment, the Due Process Clause of the Fourteenth Amendment. And of course, then Congress has the power in the Due Process Clause. So the question then is, what does 1983 do? Because 1983 is an enforcement statute. And the Supreme Court has said that Congress has not enforced the Fourteenth Amendment Due Process Clause against the states as states because states aren't persons. That's your immediate problem. Well, and I understand that. It's that, that they're still under the Fifth Amendment. Well, the Fifth Amendment does apply to the states, though, through the Fourteenth Amendment, as far as the taking without due process or taking of is that people will have no remedy. The state can now go out and grab property and not provide any compensation, and there's no remedy for that if the state then says, well, we can do that, that people can't come in. And that, you know, that just doesn't make sense when the Fifth Amendment's in effect. I think we have your position, Counsel. Okay. Thank you. Thank you, Your Honor. The case is taken under advisement, and the Court will take a brief recess before calling the fourth case.